**Mangus v. Britton**

44

*Todd A. Hoover, Assistant District Attorney,* for plaintiff.
*Stephen R. Krone,* for defendant.

CALDWELL, *J.*, July 2, 1980—This case involves the parentage of a child who is receiving public assistance. In order to secure support from the child's father, and to alleviate the demands made upon the taxpaying public, the mother, at the request of the Department of Welfare, commenced this action against defendant, whom she claims is the child's true father. On April 7, 1980 defendant was determined to be the father of plaintiff's child in a non-jury trial and was ordered to pay $10 a week for support. He was not represented by counsel at the hearing and subsequently Central Pennsylvania Legal Services entered the case on his behalf by filing exceptions to the court's finding of paternity and the entry of a support order. Legal Services has focused on defendant's poverty and his alleged inability to retain counsel or to have blood tests performed as a basis for reversing the determination of paternity.

Defendant first contends that an indigent defendant has a due process right to appointment of counsel in paternity actions. He has cited a number of cases from other jurisdictions to support his claim (see e.g., Reynolds v. Kimmons, 569 P. 2d 799

(Alaska 1977); Salas v. Cortez, 24 Cal. 3d 22, 593 P. 2d 226, 154 Cal. Rptr. 529 (1979); Artibee v. Cheyboygan Circuit Judge, 397 Mich. 54, 243 N.W. 2d 248 (1976)), but we are not convinced that such a right is constitutionally mandated.

While he has submitted a lengthy brief detailing the "fundamental and far-reaching rights at stake," defendant in the instant case is simply attempting to avoid the entry of a financial obligation. The possibility of imprisonment, which is advanced as supporting his request, is only indirectly and remotely involved in this action, since a finding of paternity establishes the identity of the child's father and a consequent right to obtain support from the judicially-determined father. While defendant here and the court in Salas, supra, speak in impassioned terms of the "sociological and psychological" implications of a paternity determination for the child, they do not elaborate on these alleged implications.[1]

A comparison between the instant case and In re Adoption of R.I., 455 Pa. 29, 312 A. 2d 601 (1973), reveals the true nature of the interests at stake here. In In re Adoption of R.I., appellant mother's parental rights were terminated after a hearing where she was not represented by counsel and was indigent. The Supreme Court, noting that the natural mother had a fundamental right in her concern for her child's liberty and the control and care of the child, held that an indigent was entitled to ap-

---

1. The only other interest asserted on behalf of the child is its economic interest in support. Ironically, this would lead one to conclude that the child would not be served by appointment of counsel for its putative father. According to the defendant, if counsel is not appointed, there is a greater chance of paternity being established, and, thus, support payments for the child.

pointment of counsel in proceedings to terminate parental rights.

Although the court did not elaborate on the meaning of "liberty," "control" and "care," it is clear that they entail the parent's right to guide the development of, among other things, the child's personality and morals in accordance with the mother's own convictions. This type of parental tie is rightly accorded the safeguard of representation by counsel in a proceeding where the issue is whether parental control over a child should be terminated.

Conversely, defendant is not claiming that he needs assistance of counsel to make a knowing, intelligent and understanding waiver of his parental rights. He has already decided that he wants no fatherly ties to the child and seeks the assistance of counsel to avoid the establishment of paternity and a consequent order of support. His interest in the outcome of the paternity suit is, therefore, essentially monetary, and we believe his reliance upon In re Adoption of R.I., supra, is therefore misplaced. Except for the obligation of support, defendant has no responsibility to the child and can effectively preclude inheritance and all other normal incidents of this unwanted relationship to which he refers. In short, defendant in the instant case is no different from any other defendant in a civil case in that a money obligation may be entered against him. While we certainly do not disparage the importance of the interests asserted by defendant, we decline to hold that, as a matter of due process or equal protection, he is entitled to free counsel.

Defendant also contends that due process required that he should have been informed of his right to blood tests sufficiently ahead of the time of trial to permit the performance of the tests and that

free blood tests should have been administered for him as an indigent defendant. We find that we do not have to decide the constitutional issue raised by defendant since the statutory law under normal circumstances adequately insures that a defendant desiring blood tests will be able to obtain them for use at trial.

Section 2 of the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S.A. §6133 et seq., provides, in pertinent part, as follows:

"In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests."

Thus, defendant already had the statutory right to blood tests if the request had been timely made. Additionally, the court is statutorily empowered to impose costs on the county where appropriate. See 42 Pa.C.S.A. §6135. We need not decide a constitutional issue when defendant's lack of diligence, as will be discussed below, prevented him from availing himself of the statutory scheme.

Defendant next maintains that the court erred in refusing to grant two motions he made immediately before trial. Defendant moved for a jury trial and, apparently, moved orally for a continuance although the latter motion does not appear in the record. Since defendant made a written motion for a continuance, however, we will consider his entire contention.

Defendant was not entitled to assigned counsel.

He knew of his right to a jury trial and was advised to get counsel when this matter was first listed in January of 1980, approximately three months prior to trial.[2] On March 24, 1980 defendant again appeared in court and announced that he had not yet retained counsel. A hearing on the paternity issue was then rescheduled for April 7, 1980, and defendant was warned that the case would proceed at that time whether or not he had obtained counsel.[3] On April 7, 1980 defendant appeared with motions drafted by Central Pennsylvania Legal Services although no attorney was there to represent defendant.

Under these circumstances there was no error in denying his motions for a jury trial or a continuance. Defendant had known for at least three months that he could obtain counsel. When he did not appear with one on April 7, it was an exercise of our discretion to proceed with the trial instead of delaying even further. At some point, while allowances can be made, cases must be moved forward to resolution. Defendant was given ample time to obtain representation and the case could not be continued indefinitely.

Finally, defendant, as a recipient of welfare, contends that the court erred in entering a support order because as a matter of law a support order cannot be entered against a person receiving public assistance. While it is true that the Superior Court in Com. ex rel. Valentine v. Valentine, 266 Pa. Superior Ct. 506, 405 A. 2d 933 (1979) (per curiam), reversed an order of support entered against a

---

2. See notes of testimony of March 24, 1980, p. 3.

3 The case had originally been scheduled for February 25, 1980, but was continued because the defendant had not been notified.

person on welfare, the court also stated in that case that "[t]here is no evidence in this case to indicate that appellant had any property or was not making a sincere effort to find employment; and, therefore, the award was not made on the basis of his unused earning capacity." Id. at 507, 405 A. 2d at 934. Thus, Valentine does not preclude a support order against a welfare recipient if he has made no sincere effort to find employment.

We, therefore, decline to vacate the order based upon defendant's contention that as a matter of law a support order cannot be entered against him. We find, however, that the present record is not sufficient to establish that the defendant has unused earning capacity and we will vacate the order at this time and schedule a further hearing to determine whether an order should be entered on the basis of an earning capacity.

Defendant is apparently confused about the contradiction between several statements the court made at the hearing on April 7, 1980 and the orders of the court issued in this case. We were not unmindful of the difficulties defendant faced in this action. Accordingly, at the hearing we indicated that defendant could submit affidavits of individuals relevant to the issues in the case, and that we would consider retrying the matter if the affidavits supported defendant's position that plaintiff was having sexual relations with other men besides defendant. Because defendant was representing himself we accorded him this opportunity to get all pertinent evidence before the court. We also signed an order for blood tests to be administered to the parties and the child, which would certainly be grounds for reconsidering our verdict if the tests favored defendant. These actions on our part, however, did not invalidate or suspend in any way our

determination of paternity made on April 7. The determination is still in effect and it was incumbent upon defendant to obtain the affidavits and/or the test if he wished the court to reconsider its determination of paternity.

We are, of course, cognizant of the importance of blood tests to a paternity case. To follow through on our order of April 7, requiring blood tests on the mother, child and father, we will also hear additional evidence to determine the financial ability of the parties to pay for the tests and the manner in which the expense of such tests should be paid under 42 Pa.C.S.A. §6135.

### ORDER

And now, July 2, 1980, defendant's exceptions are denied as to the determination of paternity, which is affirmed subject to the conditions stated in the attached opinion. His exceptions are granted as to entry of the support order which is hereby vacated. A hearing will be conducted by the undersigned on Thursday, July 24, 1980, at 11:00 a.m. at which the court shall hear further testimony on the issues not finally resolved by this opinion.